UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-00006-MW-GRJ

RICHARD MAROUS,
individually and on behalf of all,
others similarly situated,           **CLASS ACTION**

    Plaintiff,           **JURY TRIAL DEMANDED**

v.

ROCKET MORTGAGE, LLC,

    Defendant.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiff Richard Marous brings this class action against Defendant Rocket Mortgage, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff hereby amends her Complaint as a matter of course, thereby mooting Defendant's pending Motion to Dismiss, [DE 8].

1

## NATURE OF THE ACTION

1. This is a class action pursuant to the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120, and the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA").

2. Defendant is one of the largest mortgage lenders in the country.

3. To promote its services and products, Defendant engages in unsolicited text messaging, including to those who have not provided Defendant with their prior express written consent as required by the FTSA, as well as to individuals who have registered their telephone numbers on the National Do Not Call Registry.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## PARTIES

5. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and permanent resident of the Alachua County, Florida.

6. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls

7. Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f). Defendant maintains its primary place of business and headquarters in Detroit, Michigan.

## JURISDICTION AND VENUE

8. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant made or caused to be made telephonic sales calls into Florida in violation of the FTSA and TCPA. Plaintiff received such calls while residing in and physically present in Florida.

9. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*.

10. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Florida, and Defendant is a citizen of Michigan, thus CAFA's minimal diversity requirement is met.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District and received Defendant's solicitations in this District.

## FACTS

12. Commencing on or about September 27, 2021, Defendant sent the following telephonic sales calls to Plaintiff's cellular telephone number:



13. As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales calls was to solicit the sale of consumer goods and/or services.

14. Plaintiff was in Florida when he received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

15. Plaintiff's cellular telephone number has an area code that corresponds with geographic locations in Florida. Accordingly, Defendant knew or should have known that it was sending text messages to an individual located in Florida.

16. Plaintiff's cellular telephone number has been registered on the National Do Not Call Registry since January 07, 2021.

17. Plaintiff utilizes his cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

18. At the time Plaintiff received the text messages, he was the subscriber and sole user of the cellular telephone that received the messages.

19. To transmit the above telephonic sales text message calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

20. In fact, on its website, Defendant states that it utilizes "automated calling, pre-recorded calling, text message[s]…" to contact consumers. *See* www.rocketmortgage.com/legal/terms-of-use; (last accessed Feb. 9, 2022).

21. The number used by Defendant to transmit the subject text message solicitations (762538) is known as a "short code." Short codes are short digit sequences,

shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

22. Text messages using a short code can only be sent using a computer, and cannot be sent using a standard telephone.

23. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, and the fact that they originated from a short-code, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

24. More specifically, to send the text message, Defendant used a messaging platform provided to Defendant by Salesforce.com, Inc., (the "Platform"), which permitted Defendant to transmit blasts of thousands of text messages automatically and without any human involvement. On its website, Salesforce discusses the Platform's ability to send "a single message to up to 25,000 contacts, leads, or person(s)…" with the click of a button using the Platform's "Auto Send" and "Bulk Send" functionalities. *Seehelp.salesforce.com/s/articleView?id=sf.mc_dm_send_a_bulk_message_from_quick_send_message_records.htm&type=5*; (last accessed Feb. 9, 2022).

25. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

26. The Platform has the capacity to schedule the time and date for future transmission of text messages.

6

27. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

28. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

29. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

30. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

31. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

32. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

33. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

34. Compliance with the FTSA will not result in Defendant having to cease its business operations.

35. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

36. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

37. Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

38. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

39. More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

40. Plaintiff did not provide Defendant with his telephone number and did not have a business relationship with Defendant.

41. Since July 1, 2021, Defendant sent at least 3,350 outbound text messages to phone numbers with a Florida area code to at least 100 different persons associated with those phone numbers using the Platform.

42. Defendant's unsolicited messages violated Plaintiff's substantive rights under the FTSA and TCPA from be free from harassing calls like Defendant's.

## CLASS ALLEGATIONS

### PROPOSED CLASS

43. Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following Classes of individuals:

> **FTSA CLASS: All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**
>
> **DNC CLASS: All persons in the United States who from four years prior to the filing of this action (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.**

44. Plaintiff reserves the right to modify these definitions as warranted as facts are learned in further investigation and discovery.

45. Defendant and its employees or agents are excluded from the Classes.

### NUMEROSITY

46. The Classes consist of at least 100 persons. The members of the Class, therefore, are so numerous that joinder of all members is impracticable.

47. Identification of the Class members is a matter capable of ministerial determination from Defendant's text messaging records.

### COMMON QUESTIONS OF LAW AND FACT

48. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members. Among the questions of law and fact common to the members of the Class are:

   a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

   b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

   c) Whether Defendant's conduct was knowing and willful;

   d) Whether Defendant is liable for damages, and the amount of such damages;

   e) Whether Defendant sent solicitations to individuals who had registered

    their telephone numbers on the National Do Not Call Registry; and

  f) Whether Defendant should be enjoined from such conduct in the future.

49. The common questions in this case are capable of having common answers. Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

50. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

51. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

52. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of

individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violation of the FTSA, Fla. Stat. § 501.059
**(On Behalf of Plaintiff and the FTSA Class)**

54. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-53 as if fully set forth herein.

55. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

56. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any

consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

    57.    "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

58. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

59. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

60. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

61. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## COUNT II
### Violations of TCPA, 47 U.S.C. § 227(c)
**(On Behalf of Plaintiff and the DNC Class)**

62. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-53 as if fully set forth herein.

63. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-

not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

64.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

65.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

66.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

67.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

68. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

69. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes;

    c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

    d) An injunction requiring Defendant to cease all unsolicited call activity, and to otherwise protect the interests of the Class;

    e) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for Plaintiff and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3);

    f) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200, Plaintiff seeks for Plaintiff and each member of the Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3); and

    g) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: February 9, 2022

                                            Respectfully submitted,

By: **HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 East Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
mhiraldo@hiraldolaw.com

**DAPEER LAW, P.A.**
Rachel N. Dapeer, Esq
20900 N.E. 30th Ave., Ste. 417
Aventura, FL 333180
Email: rachel@dapeer.com
Telephone: 305-610-5223
*Counsel for Plaintiff*